# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS, EASTERN

| | |
|---|---|
| RAJEEYAH WHITNEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO.: 15 C 002166 |
| ) | |
| NORTHEAST ILLINOIS REGIONAL ) | JUDGE REBECCA R. PALLMEYER |
| COMMUTER RAILROAD ) | |
| CORPORATION, (D/B/A METRA), ) | |
| METRA CONDUCTOR JAMAL PORSHE, ) | |
| METRA POLICE OFFICER LAURIE ) | |
| SABATINI, METRA POLICE OFFICER ) | |
| O'NEIL, ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' METRA & OFFICERS SABATINI AND O'NEILL'S
## JOINT MOTION FOR SUMMARY JUDGMENT

NOW COME Defendants, NORTHEAST ILLINOIS REGIONAL COMMUTER RAILROAD CORPORATION, d/b/a Metra, and OFFICERS LAURIE SABATINI and MICHAEL O'NEILL, by and through their counsel of record, Minya L. Coleman, and for its Memorandum of Law in Support of their Joint Motion for Summary Judgment, state as follows:

In her Second Amended Complaint, the Plaintiff alleges the following causes of action: §1983 Excessive Force (Count I); §1983 Conspiracy (Count II); §1983 Failure to Prevent Civil Rights Violation (Count III); §1983 False Arrest (Count IV); State Law Malicious Prosecution (Count V); State Law Emotional Distress – Intentional Infliction of Emotional Distress (Count VII[sic]); State Law Battery (Count VIII[sic]); Respondeat Superior (Count IX[sic]).

The Defendants are each entitled to summary judgment for all of these claims because the undisputed material facts do not support any of plaintiff's claims as a matter of law.

1

## STATEMENT OF THE CASE

At approximately 10:56 p.m. on Thursday, September 5, 2013, Rajeeyah Whitney boarded a southbound Metra Electric District train without a ticket. [DSOF,¶5]. When approached by the conductor to purchase a ticket, she was asked her intended destination in order to determine the correct fare. [DSOF, ¶6] When Plaintiff provided her intended destination, 55th Street, she was informed that she was on the wrong train, and that she needed to be on a train travelling northbound. [DSOF, ¶6]. Plaintiff deboarded the train at the 147th Street station in order to catch a northbound train. [DSOF, ¶7]. The train then continued on to the end of the line (University Park), where it reversed direction and became a northbound train. [DSOF, ¶8]. When the train arrived at 147th Street at approximately 12:03 a.m. the Plaintiff boarded the same train. *Id.*

Immediately upon boarding, the Plaintiff began to verbally abuse the conductor, blaming him for her failure to catch the proper train. [DSOF, ¶10]. Clearly angered by her mistake, she became belligerent with the conductor and threatened to file a complaint against him. [DSOF, ¶11]. Plaintiff used profanity and derogatory terms toward the conductor. *Id.* She got up from her seat and approached the conductor in the vestibule, yelling at him and continuing to call him names. *Id.* Plaintiff refused to take a seat and calm down, despite repeated requests to do so from the on-board personnel. [DSOF, ¶12].

At approximately 12:11 a.m., Officers Sabatini and O'Neill were performing patrol duties at Metra's Kensington/115th Street Station when the train occupied by Plaintiff arrived. [DSOF, ¶13, 15]. The officers boarded the train to conduct a routine visual inspection and observed the Plaintiff engaging in disruptive and belligerent behavior toward the conductor. [DSOF, ¶16]. Officers Sabatini and O'Neill intervened and instructed the Plaintiff to take a seat in the

2

passenger seating area and to refrain from blocking the entry ways of the train and passenger area. [DSOF, ¶18]. Plaintiff repeatedly refused the lawful commands of the officers and became increasingly disruptive and directed her belligerence toward the officers. [DSOF, ¶20]. As a result of Plaintiff's behavior, the officers escorted her off the train and onto the station platform. [DSOF, ¶21]. When the officers instructed Plaintiff to leave the station premises, Plaintiff became angrier and combative, by making threatening motions with her hand, aggressively approaching the officers and, ultimately, attempting to strike Officer Sabatini. [DSOF, ¶22, 23]. These actions resulted in Officer O'Neill performing an emergency takedown of the Plaintiff and arresting her for disorderly conduct and battery against a police officer. [DSOF, ¶27-29].

Pursuant to Fed.R.Civ.P. 56, Defendants now move for summary judgment because Plaintiff's evidence of purported constitutional violations and state law claims consist of nothing more than the allegations of her complaint. The relevant and admissible evidence shows there is no genuine issue as to any material fact regarding Plaintiff's claims. Accordingly, the Defendants are entitled to a judgment in their favor as a matter of law.

## **STANDARD FOR SUMMARY JUDGMENT**

A court should grant summary judgment if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden is on the moving party to identify portions of the pleadings, depositions and other discovery-related materials that demonstrate an absence of a genuine issue of material fact. FRCP 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2007). There must be sufficient evidence favoring the non-movant so that a jury could reasonably return a verdict for

same. *Springer*, 518 F.3d at 483; *Sozskowiak v. Vill. of Arlington Hts.*, 415 F.3d 608, 612 (7th Cir. 2005). If the Plaintiff has not put forth evidence to support each and every element of her claim, summary judgment should be granted. *Griffen v. Potter*, 356 F.3d 824, 828 (7th Cir. 2004).

<u>**PLAINTIFF'S FOURTH AMENDMENT CLAIMS**</u>

"The touchstone of Fourth Amendment inquiry is reasonableness, a standard measured in light of the totality of the circumstances and determined by balancing the degree to which the challenged action intrudes on an individual's privacy and the degree to which the action promotes a legitimate government interest." *Green v. Butler*, 420 F.3d 689, 694 (7th Cir. 2005). See also, *Graham v. Connor*, 490 U.S. 386, 399 (1989) (Fourth Amendment inquiry is one of "objective reasonableness under the circumstances.").

I.  **Excessive Force Claim (Count I)**

Officer Sabatini's use of force was a reasonable response to the Plaintiff's repeated refusal to obey lawful commands to exit the station and Plaintiff's attempted battery. To determine if force used in a particular situation was reasonable, the court is to balance the nature and quality of the intrusion on the individual's rights and against the countervailing governmental interests at stake. *Id*. at, 395. As the Seventh Circuit has recently phrased it, the inquiry "looks to whether the force used … was excessive in relation to the danger [s]he posed – to the community and the arresting officers – if left unattended." *Estate of Escobedo v. Bender*, 600 F.3d 770, 780 (7th Cir. 2010).

The applicable cases have identified a number of factors relevant to the totality of the circumstances analysis. Those factors include the severity of any crime involved, whether the person poses an immediate threat to the safety of officers or others, and whether he is resisting

arrest. *Id*. at 780; *Graham*, 490 U.S. at 397. When considering an excessive force claim, the Court should consider whether the offender was interfering with the officer's execution of their duties. *Jacobs v. City of Chicago*, 215 F.3d 758, 773 (7th Cir. 2000). Relevant to the situation in this case, the Courts have held that refusing to comply with an officer's lawful order constitutes interference with an officer's duties under the statute. *People v. Gordon*, 408 Ill.App.3d 1009, 1016 (3rd Dist. 2011). Additionally, Illinois law permits a police officer to utilize any force the officer "reasonably believes to be necessary to effect the arrest and of any force which he reasonably believes to be necessary to defend himself or another from bodily harm while making the arrest." 720 ILCS 5/7-5(a).

In the present case, the question is whether the amount of force used on Plaintiff by the Defendant Officers – stunning technique of an open-handed slap and subsequent under-arm restraint – was reasonable under the circumstances. The events leading to Plaintiff's arrest are not reasonably disputed. Video surveillance from the Kensington/115th Street Station captured the event from the time Plaintiff first encountered the Defendant Officers until she was arrested and escorted off the platform. [DSOF, ¶30]. The video clearly shows the Plaintiff's escalating aggressive demeanor/behavior toward the police officers as they stood on an elevated train platform and Plaintiff's attempt to strike Officer Sabatini by violently swinging her left hand/arm. In fact, the evidence unambiguously demonstrates the Defendant Officers exercised great restraint and patience with Plaintiff's combative, belligerent and threatening behavior.

In accordance with the Fourth Amendment's objective reasonableness' standard, the Metra Police Department Use of Force Policy provides that an "officer may use any force which he/she reasonably believes to be necessary to effect an arrest and to defend him/herself or another from bodily harm while making an arrest." [DSOF, ¶19].

Both Officers Sabatini and O'Neill attest[1] that Plaintiff was both verbally and physically aggressive; that they feared Plaintiff would physically attack them; and that Plaintiff repeatedly refused their lawful commands. [DSOF, ¶17, 20, 23]. The officers' use of force necessary to protect themselves from bodily harm and to effectuate the lawful arrest of Plaintiff was reasonable. Pursuant to Illinois Statute, a police officer need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest 720 ILCS 5/7-5. An officer is justified in the use of any force which he reasonably believes to be necessary to effect the arrest and of any force which he reasonably believes to be necessary to defend himself or another from bodily harm while making the arrest. *Id.*

The fact that the Plaintiff alleges to have sustained physical injury as a result of her arrest, a claim Metra denies, does not mean that plaintiff's constitutional rights were violated. Even where an arrestee is injured, there is no constitutional violation without evidence that the police intended to injure the arrestee gratuitously. *Covington v. Smith*, 259 F.3d.Appx. 871, 875 (7th Cir. 2008). The record is completely devoid of any evidence even intimating that the Defendant Officers intended to gratuitously injure Plaintiff while placing her under arrest or transporting her off the premises and into the police car. Accordingly, Defendants are entitled to summary judgment as to Plaintiff's Count I excessive force claim.

## II.     False Arrest  (Count IV)

Plaintiff's refusal to obey the lawful orders given to her by the Defendant Officers and, moreover, her attempted battery upon Officer Sabatini provided the officers with probable cause for her seizure and arrest. In order to sustain a claim of false arrest, Plaintiff must establish that the Defendant, acting under the color of law, arrested the Plaintiff without probable cause.

---

[1] Plaintiff failed to take a single deposition during the 3 years this matter has been pending. Accordingly, affidavits are submitted for the Court's consideration of this motion.

6

*Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 679 (7th Cir. 2007). A police officer has probable cause to effect an arrest "when the facts and circumstances that are known to him reasonably support a belief that the individual has committed, is committing, or is about to commit a crime." *Id*. The existence of probable cause forecloses Plaintiff's Section 1983 and Illinois common law claims for false arrest. *Id*. at 680; *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). If the facts sufficient to create probable cause are undisputed, and "the 'what happened' questions are not at issue," probable cause becomes a question of law, which can be decided on a motion for summary judgment. *Smith v. Lamz*, 321 F.3d 680, 684 (7th Cir. 2003). *See also Potts v. City of Lafayette*, 121 F.3d 1106, 1112 (7th Cir. 1997). Moreover, the law is clear that if there is probable cause for an arrest as to one offense, there is probable cause for an arrest as to all offenses. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354-55 (2001).

It was reasonable for Defendant Officers to seize and arrest Plaintiff. Plaintiff was observed committing multiple violations of the Criminal Code, including 1) Section 26-1(a)(1), which provides, "a person commits disorderly conduct when he or she knowingly does any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace;" 720 ILCS 5.0/26-1(a)(1); 2) Section 12-3(a)(2), which provides that "a person commits battery if he or she knowingly without legal justification by any means makes physical contact of an insulting or provoking nature with an individual" [720 ILCS 5.01/12-3(a)(2)]; 3) Section 12-2(a)(6) which provides, "(a) A person commits an aggravated assault, when, in committing an assault (defined in 720 ILCS 5/12-1 as when one "knowingly engages in conduct which places another in reasonable apprehension of receiving a battery"), he/she: …(6) Knows the individual assaulted to be a peace officer…" 720 ILCS 5/12-2(a)(6); and Section 31-1 which provides, "(a) a person who knowingly resists or obstructs the performance by one known to the person to be a peace

officer…of any authorized act within his or her official capacity commits a Class A misdemeanor." [720 ILCS 5/31-1(a)].

Probable cause clearly existed for the charges of disorderly conduct and battery to a police officer. Probable cause also existed as to charges of resisting a peace officer and assault. The law is clear that if there is probable cause for an arrest as to one offense, there is probable cause for an arrest as to any offense. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354-55 (2001).

Here, upon the arrival of the Metra train, the Defendant Officers first observed Plaintiff engaged in a verbal altercation with Metra Conductor Jamal Porche, wherein she was loud, disruptive, belligerent, and disorderly. [DSOF, ¶17]. Plaintiff was instructed several times by Defendant Officers to have a seat, to which she refused and was thereafter removed from the train. [DSOF, ¶18-19]. After being removed from the train, Plaintiff was further instructed to vacate the train station premises. [DSOF, ¶22]. In direct defiance of these lawful commands, Plaintiff repeatedly refused to obey the lawful commands of the Defendant officers and thereafter became combative, verbally defiant, and belligerent. [DSOF, ¶22-23]. Plaintiff's disorderly conduct escalated to her charging toward Officer Sabatini with her finger extended toward Officer Sabatini's face in a threating motion, and ultimately with Plaintiff attempting to strike Officer Sabatini's person. [DSOF, ¶23-25]. Consistent with her training in the use of force and defensive tactics, Officer Sabatini employed an open-handed strike to stun Plaintiff and diffuse Plaintiff's erratic and violent behavior. [DSOF, ¶26].

While Plaintiff denies that she made physical contact with Officer Sabatini, the evidence is undisputed that Plaintiff encroached upon Officer Sabatini with her finger extended toward the officer's face and following Officer Sabatini's removal of Plaintiff's hand from her face, Plaintiff moved to strike Officer Sabatini. [DSOF, ¶30]. "Physical contact between a civilian and a law

enforcement officer, however minor, can provide probable cause to arrest the civilian for battery under Illinois law." *Gill v. Vill. of Melrose Park*, 35 F. Supp. 3d 956, 963 (N.D. Ill. 2014). "Whether the physical contact was intentional does not impact the existence of probable cause." *Id.* citing *United States v. Reis,* 906 F.2d 284, 289 (7th Cir.1990). However, Courts have long acknowledged that an officer need not wait until he/she is assaulted by an offender before effecting an arrest. *Potts*, at 1113 (7th Cir. 1997).

Plaintiff's disruptive and provoking conduct established probable cause for her arrest. Accordingly, Defendants are entitled to summary judgment as to Plaintiff's Count IV.

### III. Conspiracy Claim (Count II)

Plaintiff alleges that the Defendant Officers and the train conductor (who was previously dismissed as a party to this action [Dkt. 92]) conspired to deprive her of her Fourth Amendment rights as it pertains to claims under 42 U.S.C. § 1983. To establish a civil conspiracy claim under §1983, a plaintiff must prove that defendants, acting under color of law, reached an agreement with one another for the purposes of depriving the plaintiff of a federally protected right. *Amundsen v. Chi. Park Dist*., 218 F.3d 712, 718 (7th Cir. 2000 Without a viable federal constitutional claim, the conspiracy claim under § 1983 necessarily fails; there is no independent cause of action for § 1983 conspiracy. *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000). The Defendant Officers clearly had probable cause to arrest Plaintiff for disorderly conduct and battery. Probable cause also existed for the closely related charges of resisting and assault. The forced used to effect Plaintiff's arrest was reasonable under the circumstances, particularly where the Plaintiff had become an active aggressor exhibiting threatening behaviors toward a peace officer. As the Plaintiff cannot prove any underlying constitutional violation, there is no independent cause of action for conspiracy.

Nonetheless, if this court were inclined to conclude that Plaintiff has presented sufficient evidence to sustain the false arrest and/or excessive force claim, the conspiracy claim still fails. Plaintiff here has not, and cannot, demonstrate that the Defendant Officers conspired to deprive Plaintiff of her federally protected rights. Plaintiff has failed to establish or elicit any evidence to demonstrate that the Defendant officers agreed either expressly or tacitly to carry out the constitutional deprivation. Accordingly, Defendants are entitled to summary judgment as to Plaintiff's Count IV Conspiracy claim.

## IV.    Failure to Prevent Civil Rights Violation (Count III)

Plaintiff alleges that "each defendant officer had the opportunity and duty to prevent the violation of the Plaintiff's civil rights by the other Defendant Officer, but failed to do so." [Dkt. 20, ¶34]. An officer cannot be held liable for failing to intervene unless he had both a reason to know that Plaintiff's constitutional rights were being violated and "had a realistic opportunity to intervene to prevent the harm from occurring." *Montano v. City of Chicago*, 535 F.3d 558, 569 (7th Cir. 2008). Because the Plaintiff cannot prove any of the underlying constitutional violation, the individual Defendants cannot be held liable for failing to intervene. *Id.*

Nonetheless, if this Court were to find any merit to Plaintiff's claims of alleged excessive force or false arrest, liability still cannot be imposed against the Defendant Officers for a failure to intervene unless each Defendant Officer had an opportunity to alter the course of events. *Lanigan v. Village of East Hazel Crest*, *Ill*., 110 F.3d 467, 478 (7th Cir. 1997). The *Lanigan* court acknowledged that a failure to intervene claim cannot survive where the force used by an arresting officer occurs so quickly, that there is no realistic opportunity for the other officer to intervene. *Id.* In the present case, the alleged excessive force of Officer Sabatini's stunning technique of an open-handed strike occurred so quickly and without notice to Officer O'Neill

10

that he did not have a reasonable opportunity to intervene. [DSOF, ¶30]. Plaintiff cannot demonstrate that either Officer had an opportunity to alter the course of events.

Here, it is undisputed that the events that took place on the train station platform leading to Plaintiff's arrest, specifically Plaintiff's aggressive physical behavior toward the Officers, her attempted battery of Officer Sabatini, and ultimately Officer Sabatini's reasonable use of force, occurred relatively fast, approximately 11 seconds. [DSOF, ¶30]. Where contact between arrestee and officer cannot be found to be so prolonged that one officer could know or be deliberately indifferent to the other officer's actions, there can be no finding of failure to intervene. *Lanigan*, 110 F.3d at 478. Such is the case here and here can be no finding that either Metra Officer had a realistic opportunity to intervene. Defendants are entitled to summary judgment as to Plaintiff's Count III Failure to Prevent Civil Rights Violation claim.

## V. Qualified Immunity

Alternatively, the Defendant Officers are entitled to qualified immunity as to Plaintiff's Fourth Amendment claims. Qualified immunity "shields officers from civil damages liability as long as their actions could reasonably be thought consistent with the rights they are alleged to have violated. *Leaf*, 400 F.3d 1079. Although a defense, once qualified immunity has been raised, the Plaintiff then carries the burden of defeating it. *Mannioa v. Farrow*, 476 F.3d 453, 457 (7th Cir. 2007); *Jewett v. Anders,* 521 F.3d 818, 823 (7th Cir. 2008).

In order for Plaintiff to overcome Defendants' qualified immunity defense, she must first establish that Defendants' violated her constitutional rights. It has been clearly established that Plaintiff's constitutional rights were not violated. Probable cause existed for her seizure and arrest and the use of force necessary to detain and effectuate her arrest was reasonable under the circumstances. Plaintiff's escalated aggression, increased verbal and physical resistance and,

11

ultimately, her battering Officer Sabatini establishes probable cause.The Defendant Officers are entitled to summary judgment on qualified immunity grounds on each of Plaintiff's Fourth Amendment Claims (Count I through IV).

## **PLAINTIFF'S COMMON LAW CLAIMS**

Because each of Plaintiff's federal claims fail, this Court does not have jurisdiction over Plaintiff's supplemental state law claims. Pursuant to 28 U.S.C. §1367, unless provided otherwise by statute, federal courts "have supplemental jurisdiction over all other claims that are so related to claims in the action … that they form part of the same case or controversy." However, when all federal claims are dismissed, the Court has broad discretion to refuse to exercise jurisdiction over remaining supplemental state claims. *Szumny v. Am. Gen. Fin., Inc*., 246 F.3d 1065, 1073 (7th Cir. 2001).

Plaintiff's state law claims further fail pursuant to Section 2-202 of the Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/2-101 [the "Act"]. Under the Act, a public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct. Smith v. City of Chiago, 242 F.3d 737 (7th Cir. 2001). Moreover, under section 2-109 of the Act, a local public entity is not liable for any injuries resulting from an act or omission of its employee for which the employee is not liable. The Act defines willful and wanton conduct as "a course of action which shows actual or deliberate intention to cause harm or which, if not intentional, shows and utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-209. Because no facts exists that meet the willful and wanton standard, summary judgment must be granted.

Should this Honorable Court decide to retain jurisdiction, or should any of the Plaintiff's federal claims survive this Motion, the Defendants request summary judgment on each of the Plaintiff's common law claims. In support thereof, Defendants provide as follows:

### I.  Malicious Prosecution (Count V)

Similar to claims for false arrest and false imprisonment, claims for malicious prosecution are absolutely barred upon a finding of probable cause. *Aleman*, 748 F.Supp.2d at 891. Under Illinois law, which strongly disfavors claims of malicious prosecution, in order to prevail on the claim, the plaintiff <u>must</u> show, in addition to other elements, the existence of probable cause. *Gray*, 466 F.Supp.2d at 999-1000; *Mutter*, 611 F.Supp. at 847. The elements of the claim are inclusive, and not exclusive, meaning that absence of any required elements entirely defeats the claim.*Fabiano v. City of Palos Hills*, 336 Ill.App.3d 635, 641 (Ill. App. Ct. 2002) (Failure to establish even one element will preclude recovery for malicious prosecution."); *Gary*, 466 F.Supp.2d at 1000; *McDade v. City of Chicago*, 264 F.Supp.2d 730, 734 (N.D. Ill. 2003) (although three of the five elements were not in dispute, existence of probable cause supported ruling granting defendant's motions for summary judgment for malicious prosecution claim); and *Penn v. Harris*, 296 F.3d 573, 576-7 (7th Cir. 2002) (plaintiff's failure to point to evidence in the record that defendant lacked probable cause barred claim for malicious under Illinois law, thus supporting grant of defendant's motion for summary judgment)…

Here, the existence of probable cause for the charges of disorderly conduct and battery to a peace officer have been established as discussed above with respect to the Fourth Amendment false arrest claim.  Accordingly, the malicious prosecution claim must be dismissed.

Summary judgment in favor of the Defendants on Plaintiff's malicious prosecution claim is proper.

## II. Intentional Infliction of Emotional Distress (Count VII[sic])

Under Illinois law, to succeed on a claim of intentional infliction of emotional distress (IIED), a plaintiff must prove that "(1) defendants' conduct was truly extreme and outrageous as to exceed all possible bounds of decency; (2) the defendant intended to inflict severe emotional distress (or knew that there was at least a high probability that its conduct would cause severe emotional distress); and (3) the defendant's conduct did in fact cause severe emotional distress." *Richards v. U.S. Steel*, 869 F.3d 557, 566 (7th Cir. 2017) citing *Feltmeier v. Feltmeier*, 207 Ill.2d 263, 278 Ill.Dec. 228, 798 N.E.2d 75, 80 (2003). These requirements are inclusive, and not exclusive of one another. To advance a successful cause of action of IIED and to overcome a ruling of summary judgment, there must be a material issue of fact concerning all three elements of this tort as set forth above. *Johnson v. Kmart Corp*., 311 Ill.App.3d 573, 597 (1st Dist. 2000) (emphasis provided).

First, since the officers had probable cause and exercised reasonable use of force, there can be no finding of extreme and outrageous conduct.

Second, there is no evidence that the officers intended to inflict severe emotional distress.

Third, Plaintiff has failed to establish that she actually suffered severe emotional distress. Here, Plaintiff simply alleges that she cried easily, was fearful, embarrassed and pained following the occurrence. [cite, (P. 13:22- 138:4] However, courts have opined that "although fright, horror, grief, shame, humiliation, worry, etc. may fall within the ambit of the term 'emotional distress', these mental conditions alone are not actionable." *Kleidon v. Rizza Chevrolet, Inc*. 173 Ill.App.3d 116 (1st Dist. 1988). The Defendants are entitled to summary judgment as to Plaintiff's claims of Intentional Infliction of Emotional Distress.

## III. Battery (Count VIII[sic])

Any battery claim fails because the force used in detaining and arresting Plaintiff was justified. Moreover, under Illinois law, a police officer need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest; an officer is justified in the use of any force which he reasonably believes to be necessary to effect the arrest and of any force which he reasonably believes to be necessary to defend himself or another from bodily harm while making the arrest. [*See*, 720 ILCS 5/7-5]. Accordingly, Defendants are entitled to summary judgment as to plaintiffs battery claim.

## IV. Respondeat Superior (Count IX[sic])

Plaintiff also brings a state law *respondeat superior* claim alleging that Metra is liable for the actions of its agents, Defendants Laurie Sabatini and Michael O'Neill. Since the claims against the individual officers fail, no vicarious liability can be found as to Metra.

## CONCLUSION

WHEREFORE, Defendants Metra and Officers Sabatini and O'Neill respectfully request that this Court grant summary judgment in its favor on all claims, and for any other relief the Court deems just.

Respectfully submitted,

By: /s/ Minya L. Coleman
One of their attorneys

Minya L. Coleman, Esq.
A.R.D.C. #6315270
**Metra Law Department**
15th Floor
547 West Jackson Boulevard
Chicago, Illinois 60661
312.322.7097